HARRIS COUNTY APPRAISAL DISTRICT and Appraisal Review Board for the Harris County Appraisal District, Appellants,

v.

TRANSAMERICA CONTAINER LEASING INC., Appellee.

No. 01–90–00678–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 26, 1991.

Rehearing Denied Jan. 9, 1992.

William A. Olson, Houston, for appellants.

Jasper G. Taylor, III, Mary Frances Lapidus, Houston, for appellee.

## OPINION

WILSON, Justice.

This is an appeal from an ad valorem property tax case decided under Chapter 42 of the Texas Tax Code [1], in which appellee, Transamerica Container Leasing Inc. (Transamerica), originally appealed an adverse order from the Appraisal Review Board (the Board) for the Harris County Appraisal District (the District), to the 80th District Court. This order determined that shipping containers owned by Transamerica were taxable in Texas for the tax year of 1987. Transamerica's appeal to the district court was based solely on constitutional grounds, conceding the taxation was in all other respects valid. The trial court found in Transamerica's favor, holding the tax unconstitutional. We affirm.

The parties submitted the case to the trial court under Tex.R.Civ.P. 263, filing an agreed statement of facts. Transamerica contended the commerce, due process, and equal protection clauses of the United States Constitution, and the due course of law, equal protection, and uniform tax clauses of the Texas Constitution, preclude the taxation of Transamerica's shipping

---

1. Tex.Tax Code Ann. §§ 42.01—42.43 (Vernon 1982 & Supp.1991).

containers. The trial court entered judgment for Transamerica, exempting its shipping containers from taxation for the tax year 1987. The District and the Board (jointly referred to as appellants) appeal the trial court's judgment, bringing six points of error.

The parties agreed, in part, to the following relevant facts:

(1) Transamerica is a corporation organized and existing under the law of the State of New York, with its principal place of business also in New York.

(2) The property at issue generally consists of shipping containers leased by Transamerica to various shipping companies for use in the shipment of goods throughout the world.

(3) The District included these shipping containers on its appraisal record of Transamerica as subject to property tax in Texas.

(4) Transamerica used the shipping containers exclusively in foreign commerce and the containers are instrumentalities of foreign commerce.

(5) The shipping containers are frequently present within the boundaries of the District.

(6) On January 1, 1987, the shipping containers were temporarily located within the District's boundaries.

(7) Because the containers are used to ship goods to many parts of the world, they could be subject to taxation in multiple countries, and are therefore at risk of international multiple taxation.

(8) Neither Transamerica, nor appellants, provide any mechanism capable of ensuring that the containers would not be subject to international multiple taxation.

(9) Neither Transamerica, nor appellants, could state with certainty which shipping containers, if any, had actually been taxed by other countries, because the containers were leased out to other companies that were responsible for paying such taxes.

(10) The shipping containers have a substantial nexus with the State of Texas and the tax levied was fairly apportioned.

(11) Similar containers owned by foreign domiciled taxpayers were intentionally and deliberately deleted from the tax rolls for tax year 1987 by the Board and/or the District.

(12) The deletion of such containers was pursuant to appellants' standard policy to delete similar containers owned by foreign domiciled taxpayers.

Appellants, in their first point of error, contend the trial court erred in holding the commerce clause of the United States Constitution precluded ad valorem taxation of Transamerica's shipping containers by Texas and its political subdivisions. The sufficiency of the evidence is not challenged by this point of error, or any other.

■ The Supreme Court of the United States decided in the case of *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 288, 97 S.Ct. 1076, 1079, 1083, 51 L.Ed.2d 326 (1977) that, to be valid under the commerce clause of the United States Constitution, a tax on property used in interstate commerce must meet four requirements: (1) the tax must be applied to an activity that has a substantial nexus with the taxing state; (2) the tax must be fairly apportioned to activities carried on by the taxpayer in the state; (3) the tax must not discriminate against interstate commerce; and (4) the tax must be fairly related to services provided by the State. *Id.*

■ The case of *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 446–48, 452, 99 S.Ct. 1813, 1820–21, 1823, 60 L.Ed.2d 336 (1979), adds additional considerations to the *Complete Auto* four-part test. When the state seeks to tax instrumentalities of foreign commerce, a more extensive constitutional inquiry is necessary, and two additional requirements must be met: (1) The tax, notwithstanding apportionment, must not create an enhanced risk of international multiple taxation; and (2) the tax must not prevent the federal

government from speaking with one voice when regulating commercial relations with foreign governments. *Id.* Therefore, if the taxation of Transamerica's shipping containers fails any of the six requirements stated in *Complete Auto* and *Japan Line*, the tax is precluded under the commerce clause of the United States Constitution.

*The Japan Line Test*

■ Transamerica does not challenge the tax under the second requirement of the *Japan Line* test: that the taxation of its containers by political subdivisions of Texas prevented the federal government from speaking with one voice in its relations with foreign countries. A tax on domestically-owned property, such as the shipping containers owned by Transamerica, does not create the type of problems that concerned the court in *Japan Line*. *Japan Line* involved the taxation by the state of California of cargo containers owned by six Japanese shipping companies. *Japan Line, Ltd.*, 441 U.S. at 435, 99 S.Ct. at 1814. The companies were incorporated under the laws of Japan, and had their principal places of business and commercial domiciles in Japan. *Id.*

The litigants here agreed the containers were at risk of international multiple taxation. Therefore, the parties placed in issue whether the taxation of Transamerica's containers met the first requirement of the *Japan Line* test. The ultimate question presented is: Did the tax, notwithstanding apportionment, create a substantial or enhanced risk of international multiple taxation?

The trial court, in its conclusion of law six, set forth the *Japan Line* test, that the tax "must not create a substantial risk of international multiple taxation." It then concluded in conclusion of law eight that the tax creates "a risk of international multiple taxation, and thus fails to satisfy the requirements of *Japan Line*."

Appellants argue that, under *Japan Line*, there must be more than a mere risk of multiple taxation, rather the risk must be actual, or at the very least substantial. Their argument is centered around the trial court's failure to include the word "sub-stantial" in conclusion of law eight, when the court concluded the tax failed the *Japan Line* test. Appellants are assuming the court's language is to be understood as stating there was a "mere" risk of multiple taxation, rather than a "substantial" risk, and argue a mere risk of multiple taxation is insufficient to invalidate the tax at issue.

Whether a risk of multiple taxation is of such a magnitude in a given case so that it fails the *Japan Line* test is a question of fact. The trial court stated in its findings of fact the containers were "at risk of international multiple taxation." The trial court did not use the word "substantial" in its findings of fact. We are unable to read into the literal language of the findings either the word "mere" or the word "substantial."

However, by setting forth the *Japan Line* test correctly, and then concluding the tax in question failed to satisfy the test, we imply from the context of the conclusions of law, the trial court determined any ultimate question posed by the evidence regarding the degree of risk adversely to the Board and the District. There is no specific finding of fact on whether the degree of risk of multiple international taxation was substantial or otherwise. When one or more elements of a ground of recovery or defense have been found by the trial court, any "omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment." Tex.R.Civ.P. 299.

Here, the trial court expressly found there existed a risk of multiple international taxation. However, the court omitted the element of substantial risk. We find no request from appellant for additional findings of fact directed to this specific subject pursuant to Tex.R.Civ.P. 298. The finding of "substantial" risk is essential to the conclusion of law found by the trial judge that the *Japan Line* test was violated. Thus, we hold the trial court by implication found a substantial or enhanced risk of multiple international taxation from his finding the *Japan Line* test had been met.

**640**

The next question to be answered under a rule 299 analysis is whether the presumed finding of fact is supported by the evidence. The parties agreed there existed a "risk of international multiple taxation." The record is silent on how the parties quantified the "risk" contained in the agreed statement of facts. The judge had before him additional agreed facts from which he could have concluded the risk of multiple taxation was "substantial," including, but not limited to the findings that other countries could tax the containers and that no system was in place to protect Transamerica from such an event.

Additionally, the case at hand falls within the class of instrumentalities that concerned the *Japan Line* court, i.e., those used in foreign commerce. 441 U.S. at 447–49, 99 S.Ct. at 1821–22. Transamerica could not tell with certainty which shipping containers, if any, had actually been taxed, because the containers were leased to shipping companies which were required by their respective leases to pay the taxes. Neither the District, the Board, nor the state of Texas provided any mechanism capable of ensuring the containers would not be subjected to international multiple taxation for the tax year in question. We find the evidence before the trial court supports the implied finding of a "substantial" risk of multiple international taxation.

Finally, we hold the trial court's conclusions of law are correct as drawn from the facts. *Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

In light of the factual findings of substantial risk of international multiple taxation, the trial court's conclusions of law are correct in that the taxation plan of appellants does not withstand the *Japan Line* test. Thus, no discussion of the *Complete Auto* test is warranted or necessary. The trial court correctly concluded the taxation violates the commerce clause.

Point of error one is overruled.

2. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at

Because the tax is unconstitutional under the commerce clause, the remaining points of error, which contend that the taxation is unconstitutional under the due process and equal protection clauses of the United States Constitution, and the due course of law, equal protection, and uniform tax clauses of the Texas Constitution, need not be addressed.

The judgment is affirmed.

COHEN and PRICE[2], JJ., also sitting.

Houston, sitting by assignment.