**HARRIS COUNTY APPRAISAL DISTRICT and Appraisal Review Board for The Harris County Appraisal District, Appellants,**

v.

**TRANSAMERICA CONTAINER LEASING INC., Appellee.**

No. 01–90–00768–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 21, 1995.

Rehearing Overruled Jan. 25, 1996.

Kenneth Wall, Houston, for Appellants.

Jasper G. Tayor, Robert F. Corrigan, Houston, for appellee.

Before COHEN, WILSON and PRICE *, JJ.

## OPINION ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

WILSON, Justice.

Appellants, the Harris County Appraisal District (the District) and the Appraisal Review Board for the Harris County Appraisal District (the Board), appeal to this Court for a second time from a judgment which found an *ad valorem* property tax unconstitutional as applied to shipping containers owned by appellee, Transamerica Container Leasing Inc. (Transamerica). Upon remand from the United States Supreme Court, we again affirm as correct the trial court's application of law to the stipulated facts in holding the tax invalid under the commerce clause[1] of the United States Constitution.

For the taxable year 1987, the District included certain of Transamerica's shipping containers on the District's tax rolls. Transamerica protested this inclusion of its property on the rolls to the Board pursuant to former TEX.TAX CODE ANN. § 41.41.[2] The Board upheld the District's decision. Transamerica then sought judicial review of the District's order that adversely determined its

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. U.S. CONST art. I, § 8, cl. 3.

2. Act of June 15, 1985, 69th Leg., R.S., ch. 823, § 3, 1985 Tex.Gen.Laws 2880, 2881, *amended by* Act of June 15, 1989, 71st Leg., R.S., ch. 796, § 34, 1989 Tex.Gen.Laws 3591, 3601 (current version at TEX TAX CODE ANN. § 41.41 (Vernon 1992)).

protest pursuant to former TEX.TAX CODE ANN. § 42.01.[3] In the trial court, Transamerica contested the tax solely on constitutional grounds and conceded the tax to be valid in all other respects. The trial court's decision in favor of Transamerica led to the first appeal by the appellants to this Court. *Harris County Appraisal Dist. v. Transamerica Container Leasing Inc.,* 821 S.W.2d 637 (Tex.App.—Houston [1st Dist.] 1991, writ denied), *vacated and remanded,* 507 U.S. 965, 113 S.Ct. 1407, 122 L.Ed.2d 779 (1993).

After we affirmed the judgment of the trial court, appellants applied for writ of error to the Texas Supreme Court. That court denied the writ and the appellants subsequently filed a petition for writ of certiorari in the United States Supreme Court. The Supreme Court granted the petition, vacated our original decision, and remanded the case to this Court for further consideration of the appeal in light of its decision in *Itel Containers Int'l Corp. v. Huddleston,* 507 U.S. 60, 113 S.Ct. 1095, 122 L.Ed.2d 421 (1993) (holding, in part, a sales tax assessed on the leases of shipping containers delivered in the state was not unconstitutional under the commerce clause).

## Standard of Review

 The parties filed an agreed stipulation of facts with the trial court and submitted the case for decision under TEX.R.CIV.P. 263. A case submitted to the trial court upon an agreed stipulation of facts under TEX.R.CIV.P. 263 is in the nature of a special verdict and "is a request by the litigants for judgment in accordance with the applicable law." *Chiles v. Chubb Lloyds Ins. Co.,* 858 S.W.2d 633, 634 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (citing *Brophy v. Brophy,* 599 S.W.2d 345, 347 (Tex.Civ.App.—Texarkana 1980, no writ)). The court's judgment must declare only the law necessarily arising from the stipulated facts. *Chiles,* 858 S.W.2d at 634. The question on appeal is limited to the issue of the correctness of the trial court's application of the law to the admitted facts. *Id.* at 635.

Although findings of fact and conclusions of law were filed in this case, they need not have been filed. *Sharyland Water Supply Corp. v. Hidalgo County Appraisal Dist.,* 783 S.W.2d 297, 298 (Tex.App.—Corpus Christi 1989), *aff'd other grounds,* 804 S.W.2d 894 (Tex.1991).

## Summary of the Facts

The parties filed an agreed stipulation of facts with the trial court, and the full factual record before the trial judge is as follows:

(1) Transamerica is a corporation organized and existing under the laws of the State of New York, and its principal place of business is located in such state.

(2) The instant case is an *ad valorem* tax suit brought by Transamerica pursuant to Chapter 42 of the Texas Property Tax Code challenging the inclusion of certain of its shipping containers (the "Property") on the District's and the Board's appraisal rolls for the tax year 1987. Transamerica protested the inclusion of the Property on such appraisal rolls to the Board, pursuant to Chapter 41 of the Texas Property Tax Code on the ground that the Property is not subject to *ad valorem* taxation in Texas because the shipping containers are instrumentalities of foreign commerce and are used exclusively in foreign commerce, and their taxation by the State of Texas and its political subdivisions is, therefore, precluded by the Commerce and Due Process Clauses of the United States Constitution and the Due Course of Law Clause of the Texas Constitution. Transamerica also protested that the inclusion of the Property on the District's and the Board's appraisal rolls violated the Equal Protection and Commerce Clauses of the United States Constitution and the Equal and Uniform Clause of the Texas Constitution because similar property owned by foreign domiciled taxpayers was intentionally and deliberately deleted from the tax rolls for the tax year 1987 and was therefore not subjected to *ad valorem* tax for 1987.

**3.** Act of August 14, 1981, 67th Leg., 1st C.S., ch. 13, § 148, 1981 Tex.Gen.Laws 117, 174, *amended by* Act of August 29, 1991, 72nd Leg., 2nd C.S., ch. 6, § 53, 1991 Tex.Gen.Laws 26, 37 (current version at TEX.TAX CODE ANN. § 42.01 (Vernon 1992)).

Transamerica admits that taxation of the Property for the year 1987 is in all respects valid except to the extent that its taxation may be precluded by the Commerce, Due Process, and Equal Protection Clauses of the United States Constitution and the Due Course of Law and Equal and Uniform Clauses of the Texas Constitution.

(3) Transamerica has complied with all prerequisites for filing and maintaining the instant law suit and this Court has jurisdiction to hear and decide this case.

(4) The Property at issue generally consists of shipping containers described on the appraisal record of the District as property tax account number 0392374.

(5) The Property consists of certain shipping containers that are used exclusively in foreign commerce and are instrumentalities of foreign commerce. On January 1, 1987, the shipping containers were temporarily located within the boundaries of the District, although shipping containers owned by Transamerica are frequently present within the boundaries of the District.

(6) Transamerica leases shipping containers to various shipping companies which use these containers to ship goods all over the world. These containers could be subjected to taxation in a number of these countries. Thus, these containers are at risk of international multiple taxation.

(7) Neither the Board nor the District nor the State of Texas provide any mechanism capable of ensuring that the Property would not be subjected to international multiple taxation for the tax year 1987. Transamerica cannot tell with certainty which shipping containers, if any, have actually been taxed because the containers are leased to shipping companies, and these companies are responsible for the payment of taxes and information regarding such payments is not provided to Transamerica. Trans-

america does not contend, therefore, that any other country has taxed these shipping containers.

(8) Transamerica does not contend (i) that the shipping containers do not have a substantial nexus with the State of Texas, or (ii) that the tax is not fairly apportioned.

(9) Similar property owned by foreign domiciled taxpayers was intentionally and deliberately deleted from the tax rolls for the tax year 1987 by the Board and the District.

(10) The deletion of such property was pursuant to the Board's and the District's standard policy to delete similar property owned by foreign domiciled taxpayers.

Transamerica challenged the constitutionality of the unapportioned *ad valorem* tax under the commerce, due process,[4] and equal protection [5] clauses of the United States Constitution, and the due course of law,[6] equal protection,[7] and uniform tax [8] clauses of the Texas Constitution. The trial court rendered judgment for Transamerica. The District and the Board appeal by six points of error.

**Commerce Clause**

In their first point of error the Board and the District assert the trial court erred in holding the commerce clause of the United States Constitution precluded *ad valorem* taxation on the value of Transamerica's shipping containers by the State of Texas and its political subdivisions.

The trial judge found in his conclusions of law, *inter alia*, that:

4. The ad valorem taxation by the State of Texas and its political subdivisions of domestically owned shipping containers that are used *exclusively* [sic] in foreign commerce violates the Commerce Clause of the United States Constitution.

We begin by noting the trial judge's conclusion number four, as later reflected in his

4. U.S. CONST. amend. XIV, § 1.

5. U.S. CONST. amend. XIV, § 1.

6. TEX. CONST. art. I, § 19.

7. TEX. CONST. art. I, § 3.

8. TEX. CONST. art. VIII, § 1.

judgment, was broader than the question placed before him as formed by the stipulation of facts. The parties asked the trial court to determine whether the specific tax sought to be collected in 1987 from Transamerica was unconstitutional under both the United States and Texas Constitutions. Therefore, we do not find, nor could we find under the state of the record, that *ad valorem* taxation by the State of Texas and/or its political subdivisions of shipping containers used exclusively in foreign commerce is per se unconstitutional. We decide only the much narrower issue of whether the specific tax sought to be collected from Transamerica in the taxable year 1987 ran afoul of the commerce clause of the United States Constitution.

### The *Complete Auto* and *Japan Line* Tests

■ The United States Supreme Court has established a six-factor test to determine whether a state's tax on property used in interstate commerce is valid under the commerce clause. *See Itel*, 507 U.S. at 72–73, 113 S.Ct. at 1103–04. If the tax in question does not fulfill all six factors, the tax is invalid. *Id.* The first four factors of the test are used to determine compliance with domestic commerce-clause concerns. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977). A state tax is constitutional under the domestic commerce clause when the tax: (1) is applied to an activity with a substantial nexus to the taxing State; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the State. *Id.*

■ When a state wishes to tax instrumentalities of foreign commerce, two additional requirements must be met. *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 451, 99 S.Ct. 1813, 1823, 60 L.Ed.2d 336 (1979). Such a tax is valid if it: (1) does not create a substantial risk of international multiple taxation; and (2) does not prevent the federal government from speaking with one voice when regulating commercial relations with foreign governments. *Id.* Therefore, if the taxation of Transamerica's shipping containers does not meet all of the six requirements set forth in *Complete Auto* and *Japan*

*Line*, the tax is precluded by the commerce clause of the United States Constitution.

In our original opinion in this case, this Court held the *ad valorem* property tax assessed on Transamerica's containers to be invalid because it did not satisfy the first element of the *Japan Line* test. *Transamerica*, 821 S.W.2d at 640. For clarification, we will re-examine the facts of this case, first applying the factors of the *Complete Auto* test. The Supreme Court's decision in *Itel* did not address the *Complete Auto* factors at length because the owner of the foreign instrumentalities accepted the conclusion that the state tax in question there met the four-pronged domestic commerce clause test. 507 U.S. at 73, 113 S.Ct. at 1104.

### A. Sufficient Nexus, Fair Appointment, and "One Voice"

In the stipulation of facts, the parties agreed the shipping containers had a sufficient nexus with the State and the tax levied was fairly apportioned under *Complete Auto*. The "one voice" requirement of the *Japan Line* test is also not challenged. Since the parties consider these three factors satisfied, we focus our inquiry on the two remaining factors of the *Complete Auto* test and the one remaining factor under *Japan Line*.

### B. Discrimination in Interstate Commerce

Appellants argue under point of error one that the trial court erroneously found the tax unconstitutional because it discriminated against interstate commerce. They contend the commerce clause does not condemn discrimination of the type found by the trial court but instead precludes state taxation "which discriminates against interstate commerce . . . by providing a direct commercial advantage to local business." *Boston Stock Exch. v. State Tax Comm'n*, 429 U.S. 318, 329, 97 S.Ct. 599, 607, 50 L.Ed.2d 514 (1977) (citing *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 458, 79 S.Ct. 357, 362, 3 L.Ed.2d 421 (1959)).

In response, Transamerica argues the trial court correctly found the tax to be discriminatory because foreign shipping container

owners receive an unfair competitive advantage. Transamerica contends the District's standard policy of deleting foreign-owned shipping containers used in foreign commerce from its tax rolls, while including domestic-owned containers, favors foreign corporations. Moreover, they contend a positive effect on local commerce is not necessary to find a statute unconstitutional under the commerce clause. *Zee Toys, Inc. v. County of Los Angeles,* 85 Cal.App.3d. 763, 149 Cal. Rptr. 750 (1978), *aff'd sub nom. Sears, Roebuck & Co. v. County of Los Angeles,* 449 U.S. 1119, 101 S.Ct. 933, 67 L.Ed.2d 106 (1981). It is stipulated by the parties that Transamerica's containers are used only in foreign rather than interstate commerce.

■ A state may not impose a tax which discriminates against foreign enterprises competing with local businesses. *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.,* — U.S. —, —, 115 S.Ct. 1331, 1344, 131 L.Ed.2d 261 (1995). In *Japan Line,* the Supreme Court analyzed California's *ad valorem* property tax as it applied to containers owned by foreign corporations and used exclusively in foreign commerce. 441 U.S. at 445, 99 S.Ct. at 1819–20. The *Japan Line* Court, applying the *Complete Auto* factors, held that since the California *ad valorem* property tax fell evenhandedly on all personal property in the state, it was a general application tax and by necessity nondiscriminatory. *Id.* Furthermore, the Court held that if the containers were instrumentalities of purely interstate commerce, the *Complete Auto* factors would apply and be satisfied. *Id.*

■ In the case at bar, the *ad valorem* property tax is not applied evenly since foreign-domiciled taxpayers were deleted from the tax rolls. The District's omission of foreign-owned containers from the tax rolls gives an advantage to foreign corporations, but the tax does not discriminate in favor of local businesses. If the containers were instrumentalities of purely interstate commerce, the tax would not provide a direct commercial advantage to local business, and would not favor Texas businesses at the expense of businesses located in other states.

Therefore, we disagree with the conclusion of the trial court and hold the tax is not unconstitutional under the *Complete Auto* test because it does not discriminate against interstate, as distinguished from foreign, commerce.

## C. Tax Fairly Related to State Services

Appellants also assert the trial court erred in finding the tax is not fairly related to services provided by the state. The trial court concluded that since the presence of the containers in the city was of such a temporary nature, the value of any benefit received was minimal and did not bear a reasonable relationship to the amount of tax imposed.

■ Although a tax should be reasonably related to the extent of a taxpayer's contact with the state, no detailed accounting of the services provided by the state is required. *Jefferson Lines,* — U.S. at —, 115 S.Ct. at 1345; *see Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 626–27, 101 S.Ct. 2946, 2958, 69 L.Ed.2d 884 (1981). Taxes may be used for purposes unrelated to the taxable event. Even though fire and police services may not be invoked, protection conferred by these "along with the usual and usually forgotten advantages conferred by the State's maintenance of a civilized society are justifications enough for the imposition of a tax." *Jefferson Lines,* — U.S. at —, 115 S.Ct. at 1346; *see Vinmar, Inc. v. Harris County Appraisal Dist.,* 890 S.W.2d 493, 498 (Tex.App.—El Paso 1994, writ requested).

We find that under the facts of this case, the tax assessed by the District was fairly related to the services provided by the state. It would be impractical to require a corporation or an individual to pay taxes only if the services of the fire or police department, or other state agency, were actually invoked. In addition, the agreed facts contain no evidence that the tax is not fairly related to benefits provided by the state. Therefore, the trial court could not have correctly applied the law to the admitted facts and found the tax unconstitutional for not being fairly related to the services provided by the state.

We hold the *ad valorem* tax assessed by the District and the Board satisfies the four factors of the *Complete Auto* test. Accordingly, the tax in question cannot be invalidated and found unconstitutional based on the rationale of *Complete Auto.*

### The *Japan Line* Test

As stated earlier, the *Japan Line* test was specifically added by the Supreme Court in considering the legality of local taxation upon instrumentalities of foreign commerce. 441 U.S. at 451, 99 S.Ct. at 1823. However, the facts of *Japan Line* differ from the present case regarding the ownership of the containers. In *Japan Line*, the Court dealt with foreign-owned containers; in this case, a domestic corporation, Transamerica, owns the instrumentalities which are used to ship goods in foreign commerce.

After we issued our original opinion in this case, the Supreme Court issued *Itel*, an opinion involving facts somewhat similar to the present case. 507 U.S. at 63, 113 S.Ct. at 1098. We are ordered to reconsider our original opinion in light of the *Itel* decision.

In *Itel*, the issue involved a sales tax levied on the proceeds of leases of containers delivered in Tennessee and then used exclusively in foreign commerce. 507 U.S. at 63, 113 S.Ct. at 1098. As with the case at bar, the containers were owned by a domestic corporation. *Id.* Since the corporation agreed that the sales tax satisfied the *Complete Auto* test, the Supreme Court focused its analysis on applying the *Japan Line* test. *Id.* at 74, 113 S.Ct. at 1104.

### Substantial Risk of Multiple Taxation

Evaluating the validity of the *ad valorem* tax in this case under the foreign commerce clause turns on the one remaining factor of the *Japan Line* test: whether the tax creates a substantial risk of international multiple taxation. 441 U.S. at 451, 99 S.Ct. at 1823. In *Itel*, the Supreme Court upheld the constitutionality of Tennessee's sales tax as applied to a domestic company that leased containers for use exclusively in international shipping. 507 U.S. at 73–74, 113 S.Ct. at 1103–04. The *Itel* Court determined the sales tax did not create a substantial risk of multiple taxation because Tennessee (1) taxed a discrete transaction occurring within the state and (2) reduced, if not eliminated, the risk of multiple taxation by crediting against its own tax any taxes paid in another jurisdiction on the same transaction. *Id.* at 74, 113 S.Ct. at 1104. The Supreme Court held the careful apportionment of a state tax on discrete business transactions conducted within state borders did not create the substantial risk of international multiple taxation that implicates foreign commerce clause concerns. *Id.*

Although *Itel* is similar in that it involves a domestic, rather than foreign, corporation leasing the same type of shipping containers, the case at bar has several distinguishing factors. In the present case, the tax at issue is a tax on the value of the container as property. It is a tax on the value of the instrumentality itself that travels in foreign commerce and passes through foreign jurisdictions. The District and the Board concede in their brief that those containers owned by Transamerica and located within the boundaries of the District on January 1, 1987, were listed on the tax appraisal rolls at their full market value. Transamerica was not taxed, as was Itel, by a sales tax on the value of the lease when the leasing transaction was completed. Unlike the sales tax imposed on the proceeds from the lease of containers in *Itel*, there is no discrete transaction occurring within the state. Moreover, the Texas tax statute does not have any crediting provisions for taxes paid outside the state, and the District concedes it did not apportion the tax levied on the value of the containers for the time the containers spent outside its boundaries.

In *Japan Line*, the Supreme Court invalidated a California *ad valorem* property tax on cargo containers owned by a foreign company. 441 U.S. at 452, 99 S.Ct. at 1823. In that case, there was evidence presented of multiple international taxation, not just a risk of such taxation. *Id.* The Court subsequently noted that in *Japan Line*, it had "relied strongly on the fact that one taxing jurisdiction claimed the right to tax a given value in full, and another taxing jurisdiction claimed the right to tax the same entity in part—a combination resulting necessarily in double taxation." *Container Corp. of Amer-*

*ica v. Franchise Tax Bd.,* 463 U.S. 159, 188, 103 S.Ct. 2933, 2952, 77 L.Ed.2d 545 (1983). In the case at bar, there is no evidence the containers are in fact subject to multiple taxation, as was found in *Japan Line.*[9] Under the standard of review, we must determine the correctness of the trial court's application of the law to the stipulated facts. We must determine whether the admitted facts establish a substantial risk of multiple taxation as a matter of law.

In determining whether the tax created a substantial risk of multiple taxation, the trial judge had the following admitted facts before him:

> a) The shipping containers are instrumentalities of foreign commerce and are used exclusively in foreign commerce;
>
> b) Transamerica leases shipping containers to various shipping companies which use these containers to ship goods all over the world. These containers could be subjected to taxation in a number of these countries. Thus, these containers are at risk of international multiple taxation because they are used to ship goods throughout the world; and
>
> c) neither the Board nor the District nor the State of Texas provide any mechanism capable of ensuring that the property would not be subjected to international multiple taxation for the tax year 1987.

The parties agreed there existed a "risk of international multiple taxation." The record is silent on how the parties quantified the "risk" contained in the agreed statement of facts. We find the trial court had before it additional agreed facts from which it could have concluded as a matter of law that the risk of multiple taxation was "substantial," including the stipulated facts that other countries could tax the containers and that no system, such as tax crediting or apportionment, was in place to protect Transamerica from such an event.

█ Neither the District, the Board, nor the State of Texas provided any mechanism

capable of ensuring the containers would not be subjected to multiple international taxation for the year in question. Further, because the tax levied by the District on Transamerica's containers was based on their full value, any additional tax imposed on that value by another taxing jurisdiction would necessarily result in double taxation. The District's taxation scheme therefore creates a substantial risk of multiple taxation.

We hold the tax assessed on Transamerica's containers violated the commerce clause of the United States Constitution and is thus invalid. Therefore, we hold the trial court correctly applied the law to the stipulated facts in concluding that the taxation plan of the appellants does not withstand the *Japan Line* test. Consequently, we again affirm the decision of the trial court.

As we have determined the tax violates the commerce clause, we do not address the remaining points of error brought by the Board and the District.

---

9. In *Japan Line,* the Supreme Court explicitly left open the question of when the "mere risk" of multiple taxation would invalidate a state tax, and whether such a risk would be evaluated differently in situations involving foreign, as opposed to interstate, commerce. 441 U.S. at 452 n. 17, 99 S.Ct. at 1823 n. 17.