Opinion issued June 3, 2010.

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00970-CV

———————————

Paul Poong Young Kim, Andrew Keeyoung Chung, Jennifer E. Chung, Nam
Sik Kim, Mark H. Kim, Juri Lee, Sonia Heasook Kim, Jin-bum Hur, and Soon Ja Hur, Appellants

V.

Board of
Trustees of the Korean Christian Church of Houston, Appellee



 



 

On Appeal from the 165th

Harris County, Texas



Trial Court Case No. 2007-70842

 



 




 

MEMORANDUM OPINION

Appellants,
Paul Poong Young Kim, Andrew Keeyoung Chung, Jennifer E. Chung, Nam Sik Kim,
Mark H. Kim, Juri Lee, Sonia Heasook Kim, Jin Bum Hur and Soon Ja Hur (collectively
“the parishioners”), appeal a judgment  rendered in favor of appellees, the Board of Trustees
of the Korean Christian Church of Houston (“the Board”).  After consolidating multiple causes, the
trial court adopted the findings of fact and conclusions of law from an
appointed Special Master, rendered judgment in favor of the Board, and ordered the
parishioners to pay attorneys fees and costs. 
In two issues, the parishioners contend the trial court erred by (1)
making an erroneous conclusion of law regarding the Korean Christian Church of
Houston Constitution’s quorum requirement, and (2) entering the permanent
injunction without an evidentiary hearing. 
We conclude the quorum requirement was met and the hearing before the Special
Master satisfied the hearing requirement for the injunction.

We affirm. 

Background

           The
Korean Christian Church of Houston (“KCCH” or the “church”)  is a Texas 501(c)(3) non-profit corporation,
established in 1978 to serve the religious needs of the Houston Korean
community.  In 1998, Dae Woo Cho was
elected as an elder on the Board.  In
2003 and 2006, Sung Ho Cho, Kyung Han Kwon, Tae Suk Chung, and Hong Baei Kim
were elected as elders.  These elders constituted
all of the members of the duly elected KCCH Board, other than the senior
pastor. 

Chul Hong Park became the senior
pastor at KCCH in December 2006, replacing retiring senior pastor Ichan
Chung.  Once Park was initiated as the
senior pastor, under the KCCH Constitution, he became the sixth member of the
KCCH Board and served as the acting chairman.

 
In September 2007, parishioner Paul Poong Young Kim, who at the time was
a deacon of the church, made requests for the Church’s financial records.  Park, Associate Pastor Sueng Woong Ok, and the
parishioners later accused the Board of financial impropriety. 

On November 4, 2007, a meeting of
the Board was called.  Park did not
attend and the Board appointed a temporary chairman pursuant to Article 40 of
the KCCH Constitution.  Through their
votes, the Board adopted a resolution terminating Ok from his position as
associate pastor.   

On November 11, Park announced to
the General Assembly that he had suspended the Elders and that they no longer
constituted the other members of the Board. 
He did this without the approval of the Board or the church’s Council of
Deacons or General Assembly.  The same
day, he unilaterally appointed five new members to the Board.  The trial court later found Park’s actions
invalid and unlawful under the KCCH Constitution and found that Park’s actions
did not displace the duly elected Board. 
Also on November 11, the Board, in absence of Park, unanimously resolved
to terminate Park as Chairman of the Board and resolved to suspend Park.  

The next day, on November 12, Park
and parishioner Jin-Bum Hur (“Hur”) filed a 9.01 report with the Texas
Secretary of State and changed the registered agent and registered agent’s
address for KCCH.  The trial court later
held that Park and Hur lacked authority to change KCCH’s registered agent and
registered address.

The Board quickly brought a
declaratory judgment action against Park and Ok, seeking a temporary
restraining order against Park and Ok in cause number 2007-70842 in the 269th
District Court.  In its petition, the
Board stated that Park and Ok had been terminated according to church procedure
and alleged that Park and Ok’s refusal to relinquish their duties resulted in
physical altercations during church services. 
Park and Ok filed counter-claims against the Board claiming it breached
employment agreements.  The 269th
District Court granted a temporary injunction. 
In response to the injunction, Howard Chong, Andrew Chung, and Jennifer
Chung each filed defamation suits against the Board in cause number 2007-71102
and cause number 2007-71113.   The
parishioners also filed a petition for receivership of the KCCH and for injunctive
relief in cause number 2007-77264 in the 190th District Court, which was heard
and denied by the 80th District Court.  

Nine days after the first lawsuit
was filed, Park held a General Assembly meeting.  The court later determined that the meeting
was not properly called and that it had no force and effect under the KCCH
Constitution because it was based upon invalid notice and procedure.

In December 2007, Hur opened a bank
account in the name of KCCH at Central Bank, and Park led a worship service of
former KCCH members at an outside facility. 
The Board, however, also continued to govern the KCCH.  The Board, acting in the absence of Park,
provided notice of its disciplinary action decisions with respect to over 20
KCCH members to the Council of Deacons.

In January, a notice issued that
the Council of Deacons would hold a meeting on January 27.  On January 27, the Council of Deacons held a
meeting and unanimously voted to terminate Park or, alternatively, to accept
his resignation.  

After notice was provided, the
General Assembly had an extraordinary meeting in February 2008 for the purpose
of terminating Park or alternatively, accepting his resignation.  The General Assembly made an affirmative vote
to terminate Park or, alternatively, to accept his resignation.  At the meeting, the General Assembly also
approved the 2008 KCCH budget.   

Each cause number related to this
litigation was transferred to the 165th District Court, which subsequently
consolidated all matters into cause number 2007-70842.  The parties appeared before the court and the
court announced that the matter would be assigned to a Special Master for
consideration.  The trial court ordered
the Special Master to make findings of fact and conclusions of law and to
answer various questions presented by the parties.  All parties submitted numerous exhibits,
arguments, and questions to the Special Master. 
The Special Master presented the parties with her findings of fact and
conclusions of law.  The parishioners
objected to the findings of fact in their “entirety.”  The parishioners also specifically objected
to 12 conclusions of law, requesting modification of these 12 conclusions.  

The trial court adopted the Special
Master’s findings of fact and conclusions of law.  The trial court denied all relief sought by the
parishioners, noted that the Board properly terminated Park and Ok, and entered
a permanent injunction.  In the
injunction, the court permanently enjoined the parishioners from certain
activities at KCCH.  The court also enjoined
Chul Hong Park and Seung Woong Ok from entering KCCH premises or property, and
from performing pastoral duties at KCCH. 
Finally, the court enjoined the parishioners from entering KCCH premises
or property, as well as from attending services at KCCH, from participating in
church administrative duties and from identifying themselves as members of
KCCH.  The trial court ordered the
parishioners to pay attorney’s fees and costs. 
This appeal followed.

Special Master’s Conclusions of Law

The parishioners contend the trial
court erred because it adopted an erroneous conclusion of law from the Special
Master.  Specifically, the parishioners assert
that without Park’s presence, the KCCH Board could not suspend Park’s duties
and could not terminate Park.  Furthermore,
the parishioners assert that any act taken without Park’s presence was an
illegal ultra vires act.

A.      Standard of Review

          “Appellate
courts review a trial court’s conclusions of law as a legal question.”  BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  “The appellant may not challenge a trial
court’s conclusions of law for factual insufficiency; however, the reviewing
court may review the trial court’s legal conclusions drawn from the facts to
determine their correctness.”  Id. 
“If the reviewing court determines a conclusion of law is erroneous, but
the trial court rendered the proper judgment, the erroneous conclusion of law
does not require reversal.”  Id.; see
also In re J.J.L.-P., 256 S.W.3d
363, 376 (Tex. App.—San Antonio 2008, no pet.) (observing that erroneous
conclusions of law need not prompt reversal if judgment can be sustained on any
legal theory supported by evidence).

          B.      Analysis

The parishioners contend the trial
court erroneously concluded that the Board could act, suspend, or terminate
Park without his presence on the Board. 
The court, through the Special Master, analyzed the KCCH
Constitution.  The KCCH Constitution
includes the following provisions:

ARTICLE 38: When the pastor
is found incapable of performing his duty due to breach of covenant embodied
either in the Statement of Faith as set forth in Part 2 of this Constitution or
oath of office offered in his installment ceremony, for health reasons, or due
to his misconduct of a serious nature, a resolution shall be adopted to remove
him from office or suspend his duty with 2/3 or more consenting votes of each
of the Board, the Counsel and the General Assembly.

 

. . . . 

 

Article 40:  Structure of the Board of Elders (the Board)—the
Board is composed of senior pastor and active elders of the church.  The senior pastor serves as the chairman and
the Board names a secretary for recordings and liaison.  The chairman and the majority of the Board
members constitute quorum for meetings. 
In case the chairman is on leave, a temporary chairman shall be elected
from among the Board members.

 

. . . .

 

Article 64:  The Church disciplinary actions consist of
four types: reprimand, suspension, dismissal and excommunication, and ranges of
the disciplines are as following. 
Disciplinary matters shall be investigated by the Board and the Board’s
decision shall be notified to the subject and the Council.

          1.  Reprimand: Self
restraint for a period of at least one month.

          2.  Suspension: Loss
of position held, for up to one year.

          3.  Dismissal:
Forfeiture of rights to hold any office.

4.  Excommunication: Removal of the name from the
Church 

roster.

 

. . . . 

 

Addendum, Article 2:  In the course of enactment for any
particulars not covered in this Constitution, customary practices take place of
the Constitution.  For those cases [where]
the customary practices are ambiguous[,] the Board and the Council may decide
on its disposition.

 

The trial court adopted the following pertinent conclusions
of law of the Special Master, who based her analysis on the Constitution:

 

8.       The actions of the [Board] on November
11, 2007, to terminate Senior Pastor Park as Chairman of the [Board] and to
suspend Senior Pastor Park were proper pursuant to Article 38 of the
Constitution and Article 64 of the Constitution.

 

.
. . .

 

14.     The [Board] is empowered to unilaterally
discipline members of the church pursuant to Article 64 of the Constitution.

          Article 64 does not require
progressive discipline within the four categories . . . .

 

15.     The discipline of members, in December
2007, by the [Board], which was duly elected and conducting business in absence
of a senior pastor, was proper pursuant to Article 64 of the Constitution.

 

16.     The actions on January 6, 2008, of the [Board]
were proper under the Constitution.

          

.
. . . 

 

20.
    Senior Pastor Park’s termination as
Pastor of KCCH became effective February 10, 2008.

 

The record and the KCCH Constitution
support the trial court’s findings and conclusions.  First, as the trial court concluded, the
board was not required to meet to terminate Park.  Article 38 controls termination and
suspension of a pastor under the KCCH Constitution.  Article 38 does not refer to requirements of
a quorum nor does it require the Board to meet to raise and consent to a
resolution to terminate or suspend a pastor. 
Rather, Article 38 points out that to terminate a pastor or to suspend
his duties, a resolution must be raised by the Board, and two-thirds, or four out
of the six members, must consent to the resolution through a consenting
vote.  After two-thirds of the Board
consent, two-thirds of the Council of Deacons and then two-thirds of the General
Assembly must approve the resolution before the Pastor is considered terminated
under the KCCH Constitution.  

This process outlined in Article 38
was followed by the Board, the Counsel of Deacons, and the General Assembly.  Five of the six Board members passed a
resolution for the permanent termination of Park.  The Council of Deacons unanimously voted to
pass the resolution to terminate Park.  Finally,
the General Assembly affirmatively voted by more than two-thirds to terminate
Park.  We conclude that the Board was not
required by the Constitution to hold a meeting to terminate Park, and that the
Board and KCCH properly followed the procedures outlined in Article 38 when it
terminated Park.  Park’s termination was
also consistent with Article 64, which, without reference to a meeting
requirement, allows the Board to discipline members of the church, up to and
including dismissal and excommunication from the church.

Second, contrary to the parishioners’
assertions, the Board reached a quorum once they appointed a temporary chairman
because the KCCH Constitution allowed them to appoint a temporary chairman when
Park was on “leave” from the meetings.  Under
Article 40 of the KCCH Constitution, if the permanent chairman is on “leave,” a
quorum may be reached with a temporary chairman that shall be elected from
among the Board members.  Although neither
the Constitution nor the Operating Rules define “leave,” Article 26.3 indicates
that “leave” does not just refer to a self-imposed leave of absence, but can
also refer to situations in which the Board has suspended a pastor.   Article 26.3 allows the Board to place an
elder on a “leave of absence” as a disciplinary action for failing to behave
virtuously.  Article 26.3 states, 

When an elder fails to
behave virtuously on behalf of the Church, fails to meet the provisions of
qualification as set forth in the Article 25, or wishes not to serve in active
duty, the Board shall decide for resignation or leave of absence for a period
of time.  The leave is limited to one
year in length and can be repeated no more than twice.

 

Article 26.3 shows that one meaning of “leave”
includes a leave of absence imposed by the Board.  Furthermore, Article 2 of the Addendum notes
that when “particulars” are “not covered in this Constitution, customary
practices take place of the Constitution,” and if the “customary practices are
ambiguous, the Board and the Council may decide” on the disposition of the
matter.  We conclude the trial court was
correct in determining that “leave,” as found in Article 40, may include
situations in which the Board has unilaterally resolved to terminate or place a
senior pastor on a leave of absence.

The record shows that the Board unilaterally
resolved to suspend all of Park’s duties, including his chairmanship of the Board,
and that five of the six Board members consented to the resolution through
their votes.  Five members constitute
over two-thirds of the Board.  Once
two-thirds of the Board voted, Park was properly placed on “leave.”  With Park on leave, pursuant to Article 40,
the Board could act at meetings by reaching a quorum through their appointment
of a temporary chairman.  We hold that
the trial court correctly concluded that Park was properly terminated pursuant
to Article 38, and that the quorum was met pursuant to Article 40 through the
Board’s appointment of a temporary chairman. 
See BMC Software, 83 S.W.3d at
794.  

          We
overrule the first issue.

Permanent Injunction

          In
their second issue, the parishioners contend the trial court erred by
permanently enjoining them without holding an evidentiary hearing.

          

 

A.      Standard of
Review

Whether to grant a permanent or
temporary injunction is ordinarily within the sound discretion of the trial
court and, on appeal, the appellate court will limit its review of the trial
court’s action to the question of whether the action constituted a clear abuse
of discretion.  Computek Computer & Office Supplies, Inc. v. Walton, 156 S.W.3d
217, 220 (Tex. App.—Dallas 2005, no pet.). 
Generally, a permanent injunction should not be entered unless the trial
court has held a full evidentiary hearing. 
State v. Gibson’s Distributing Co.,
436 S.W.2d 122, 124 (Tex. 1968); cf.
Citizens State Bank of Sealy, Tex. v. Caney Investments, 746 S.W.2d 477,
478 (Tex. 1988) (noting it was error to deny right to trial by jury at hearing
on permanent injunction).

In this case, the trial court entered the permanent
injunction based upon the findings of a Special Master.  The appointment of a Special Master is done
in exceptional circumstances when there is good cause.  Tex.
R. Civ. P. 171.  Once appointed,
the Special Master shall perform all of the duties required of him by the
court, shall be under orders of the court, and have such power as a master in
chancery has in a court of equity.  See id.  
The Special Master may require the production of evidence, rule on the
admissibility of evidence, and may examine witnesses.  Id.  When requested by a party, the Special Master
shall make a record of the evidence offered and excluded in the same manner as
provided for a court sitting in the trial of a case.  Id.  The court may confirm, modify, correct,
reject, reverse, or recommit the Special Master’s report, after it is filed, as
the Court may deem proper and necessary in the particular circumstances of the
case.  See id.  

If no proper objection is made to the Special Master’s report
before the trial court adopts it, the report becomes conclusive on the issues
considered by the Special Master.  Lesikar
v. Moon, 237 S.W.3d 361, 371
(Tex. App.—Houston [14th Dist.] 2007, pet. denied); Young v. Young, 854 S.W.2d 698, 701 (Tex. App.—Dallas 1993, writ
denied); Owens-Corning Fiberglas Corp. v.
Caldwell, 830 S.W.2d 622, 625 (Tex. App.—Houston [1st Dist.] 1991, orig.
proceeding); Minnich v. Jones, 799
S.W.2d 327, 328 (Tex. App.—Texarkana 1990, no writ).  It is the burden of the party dissatisfied
with the Special Master’s report to make specific objections to the report,
before the court adopts the report.  Lesikar, 237 S.W.3d at 371; Novotny v. Novotny, 665 S.W.2d 171, 173
(Tex. App.—Houston [1st Dist.] 1984, writ dism’d).  To the extent the Special Master’s report is challenged
by exceptions, the Special Master’s report is not binding and the contested
fact issues are to be tried de novo before the court if a jury has not been
requested, or before a jury if one has been requested.  Lesikar,
237 S.W.3d at 371.  Specific objections
to the Special Master’s report are timely if made before the trial court adopts
the Special Master’s report.  Young, 854 S.W.2d at 701 n.6.  

 

B.      Analysis

          In
the court’s final judgment, it adopted the Special Master’s findings of fact
and conclusions of law and entered the findings and conclusions as the court’s
findings of fact and conclusions of law. 
Based on the Special Master’s findings and conclusions, it then
permanently enjoined Park, Ok, and the parishioners, from certain specified
activities related to the KCCH Church. 

          The
record shows that the parishioners made only a general objection to the Special
Master’s findings of fact.  They stated,
“[We] object to the Special Master’s Findings of Fact, Conclusions of Law, and
Answers to questions Posed by the Parties in their entirety . . . .”  On the other hand, they made specific
objections to 12 of the Special Master’s conclusions of law.  Because they made only a general objection to
the findings of fact, the objection by the parishioners was insufficient to
advise the court of a fact issue that would require an evidentiary hearing.   See
Lesikar, 237 S.W.3d at 371 (“It is the dissatisfied party’s burden to make
specific objections before the report is adopted by the court.”); Campbell v. C.D. Payne & Geldermann
Sec., Inc., 894 S.W.2d 411, 425 (Tex. App.—Amarillo 1995, writ denied)
(characterizing objection to “charge in its entirety” as general objection).

Without a proper objection to any
of the Special Master’s findings of fact, we conclude the findings became
conclusive when the trial court adopted them, and that there were no longer any
disputed factual matters once the court adopted the findings.  Although the general rule is that a court
must hold an evidentiary hearing before issuing a permanent injunction, when
there is an agreed statement of facts, and the trial court is not called upon
to resolve any disputed factual matters, no evidentiary hearing is
required.  Int’l Union v. General Motors Corp., 104 S.W.3d 126, 129 (Tex.
App.—Fort Worth 2003, no pet.).  Instead,
the trial court simply renders judgment as a matter of law, based upon the agreed
facts.  Id.  (citing Harris County Appraisal Dist. v. Transam.
Container Leasing Inc., 920 S.W.2d 678, 680 (Tex. App.—Houston [1st Dist.]
1995, writ denied) (holding that sole issue on appeal from trial on agreed
facts is whether trial court properly applied law to agreed facts)).  Because there were no disputed facts, we
conclude the trial court did not abuse its discretion by issuing the permanent
injunction without holding an evidentiary hearing.  See
Lesikar, 237 S.W.3d at 374–75; Computek
Computer, 156 S.W.3d at 220.

We overrule the second issue.




 

Conclusion

          We affirm the judgment of the trial
court.

 

 

 

                                                                             Elsa
Alcala

                                                                             Justice

 

Panel
consists of Justices Jennings, Alcala, and Massengale.