Ivan HARRISON, Appellant,

v.

**AIR PARK ESTATES ZONING COMMITTEE, Appellee.**

No. 18816.

Court of Civil Appeals of Texas, Dallas.

Jan. 22, 1976.

Donald A. Muncy, Fiedler & Fortescue, Richardson, for appellant.

Robert J. Truhill, Dallas, for appellee.

AKIN, Justice.

This is an appeal from a temporary injunction against defendant Ivan Harrison, obtained by plaintiff Air Park Estate Zoning Committee, restraining defendant's completion of an aircraft hangar on property of which he is equitable owner. Plaintiff's property is a part of a larger tract originally owned by Milton J. Noell, which was subdivided into individual lots to provide "homesites for people who like airplanes." The development contemplated that persons buying lots would build both a hangar and a residence on each lot. In 1969, Harrison purchased one of the lots under a note and a contract for deed containing the following restrictions and provisions:

> 12b . . . *A hangar may be built before the home is built* . . . .
>
> 16 These covenants . . . shall be binding . . . until revoked or *modified in whole or in part by a three-fourths majority vote of the then owners of real property therein,* said vote to be on the basis of one vote per lot therein. [Emphasis added.]

Acting under paragraph 16, 12b was modified by written agreement of 76.4% of the equitable owners of lots in the development to read as follows:

> . . . *a home may be built with a hangar as a later addition but no hangar may be built before a home* . . . . [Emphasis added.]

The documents changing the restriction were filed of record on March 22, 1971, although the modification had been approved and executed on March 24, 1970. All equitable and legal lot owners were notified by plaintiff of this modification on February 19, 1971. Noell, the developer, owned equitably 42% of the lots which percentage he voted to change 12b.

On April 26, 1974, defendant Harrison submitted to plaintiffs a plan for the construction of a hangar on his lot without first building a house. This plan was disapproved on May 21st by plaintiffs because it violated restriction 12b as modified. Harrison, nevertheless, began construction of the hangar, and this action precipitated suit by the zoning committee to enjoin construction. The trial court issued its temporary injunction and Harrison appeals. We affirm.

Harrison contends that the trial court erred in granting the temporary injunction because: (1) The modification of paragraph 12b was not valid because it was approved by the various lot owners signing circulated documents rather than at a formal meeting, and (2) equity will not permit a grantor [Noell] to sell property under certain restrictions and to retain rights to impose further restrictions.

■ Since this is a temporary injunction, the principal question presented is whether the trial court abused its discretion in issuing the writ. *Transport Company of Texas v. Robertson Transports,* 152 Tex. 551, 261 S.W.2d 549, 552 (1953); *Electronic Data Systems Corp. v. Powell,* 524 S.W.2d 393, 395 (Tex.Civ.App.—Dallas 1975, writ ref'd n. r. e.). This inquiry requires a determination of whether a valid vote was taken and whether the modification of paragraph 12b was reasonable.

*Validity of Vote*

■ Harrison argues that the method of voting on amending the deed restrictions lacks specificity and is, therefore, ambiguous. He contends that "the very essence of the word vote denotes *an opportunity* by all persons entitled to vote to express their approval or disapproval." [Emphasis added.] Although paragraph 16, supra, specifies no particular method of voting, this lack of specificity does not render the paragraph ambiguous. Moreover, Harrison and other lot owners had this opportunity. Consequently, we hold that this was a valid vote in accordance with the contract for deed. This is true because early in 1970 before execution of the document modifying the restrictions, notice was given of a meeting of equitable and legal owners of

lots in the subdivision to discuss the modification of 12b. Although notice of the meeting was given to all owners, an insufficient number to modify the restriction attended. Although Harrison attended this meeting, he neither signed the petition nor voiced objection. After this meeting a petition to modify was hand circulated to other lot owners. By this effort the proponents of the modification were successful in securing sufficient votes to change the restriction. We see nothing unfair in obtaining the necessary vote by personal contact with the owners. We conclude, therefore, that this contention is without merit.

### Reasonableness of Modification

 Harrison also argues that the modification is void because it is more restrictive than the original covenant. We cannot agree with this contention because, even though the modification was more restrictive, it was consistent with the overall plan of development and was neither unreasonable nor prohibited by law. Furthermore, paragraph 16 of the covenants gave the right to amend the restrictions to three-fourths of the owners of the property. Since the subdivision was designed to provide "homesites for people who like airplanes," the apparent purpose of the modification was to protect the rights of the property owners by insuring that both homes and hangars would be built. Because this modification enhanced, rather than abrogated, the original plan specified in the contracts between the developer and the various lot owners, we hold it to be reasonable. *Couch v. Southern Methodist University,* 10 S.W.2d 973 (Tex.Comm'n App.1928, jdgmt. adopted).

Landowners have the right to impose any restrictions they choose so long as the restrictions are not against public policy or illegal. *Parker v. Delcoure,* 455 S.W.2d 339, 343 (Tex.Civ.App.–Fort Worth 1970, writ ref'd n. r. e.); *Goodstein v. Huffman,* 222 S.W.2d 259, 260 (Tex.Civ.App.–Dallas 1949, writ ref'd). The restrictions imposed by Mr. Noell, the original owner and developer of the subdivision, were reasonable and compatible with the purpose of the development, and, the owners of the lots had a right under paragraph 16 of these restrictions to amend them commensurate with the purpose and intent of the development.

Harrison's final contention is that the trial court erred in concluding that an equitable owner had no right to exercise incidents of ownership. We agree. *City of Garland v. Wentzel,* 294 S.W.2d 145, 147 (Tex.Civ.App.–Dallas 1956, writ ref'd n. r. e.); *cf. City of Austin v. Capitol Livestock Auction Co.,* 453 S.W.2d 461, 464 (Tex.1970). However, if the court's order is correct on any theory of law applicable it must be sustained. *First National Bank v. Lone Star Life Insurance Co.,* 524 S.W.2d 525, 531 (Tex.Civ.App.–Dallas 1975, writ ref'd n. r. e.). We conclude that there is evidence to support the injunction because the modification was approved by 76.4% of the equitable owners as well as 98.53% of the legal owners.

Affirmed.