In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-21-00166-CV

CHARMAIN ADLONG AND CHARLES KENNEDY, Appellants

V.

TWIN SHORES PROPERTY OWNERS ASSOCIATION, Appellee

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 20-05-05973-CV**

### MEMORANDUM OPINION

This appeal pertains to a dispute over a property owners' association's amendments to property restrictions. Appellants Charmain Adlong and Charles Kennedy (collectively "Plaintiffs" or "Appellants") sued Appellee Twin Shores Property Owners Association ("Defendant," "Appellee," or "the POA") seeking declaratory relief. Appellants bought a home in Twin Shores subdivision in 2014. The parties agree that Appellants bought their property subject to the existing restrictions, and further that the governing documents allowed the POA, from time

to time, to amend the restrictions. The Appellants challenge the amendments to the property restrictions adopted in 2020 by the POA, arguing the new restrictions ("the 2020 Amendment") took away their right to rent their property, which they contend they had "under prior restrictions." According to the Plaintiffs, the 2020 Amendment prohibited short-term rentals of less than six months, required regular and exclusive occupancy by tenants, prohibited leasing less than a whole house, prohibited leasing to more than one family, and prohibited rental advertising on specific internet sites.

The case was submitted in the trial court on the parties' briefs and on stipulated facts. The trial court granted declaratory relief to the POA and determined that the 2020 Amendment was a valid amendment that was enforceable against the Plaintiffs, but it declined to award attorney's fees to either party. Plaintiffs appealed. For the reasons stated herein, we affirm.

Stipulated Facts

The parties agreed for the case to be submitted under Rule 263 and stipulated to the relevant facts, which we quote below.[1]

> 1. The Twin Shores subdivision lies on Lake Conroe in Montgomery County, Texas.
> 2. The original restrictive covenants for Twin Shores were adopted and filed in the public record in 1972.[2] The provisions of the 2007 and 2020 Restrictions are stipulated.

---

[1] *See* Tex. R. Civ. P. 263 (providing that parties may submit matters in controversy upon a filed agreed statement of facts).

[2] The original restrictions from 1972 are not part of our record. The only restrictions in the record are dated in 2007 and 2020.

3. Plaintiffs bought a lakefront vacation home in the Twin Shores subdivision in 2014. They relied on the rights accorded by the restrictive covenants when deciding to buy and remodel the home. They wished to rent out the home for short terms when they were not using the home for themselves and their family. They rely on the rental income to keep the property in light of the sums they spent improving it and mortgaging it.

4. Plaintiffs advertise their home for rent on the internet using websites such as VRBO.com.

5. On February 28, 2020, the Twin Shores Property Owners Association, having obtained the votes of a majority of the subdivision property owners in favor of Exhibit 2, recorded Exhibit 2 in the real property records of Montgomery County.

6. Plaintiffs voted "No" to Exhibit 2.

7. The HOA has indicated its intent to enforce the 2020 Restrictions, so a live controversy exists between the parties which a declaratory judgment would resolve.

8. Plaintiffs filed this suit on May 20, 2020 for a declaratory judgment that Exhibit 2 cannot be enforced against them. They sought attorney's fees under the Texas UDJA. Defendant answered with a general denial and claim for attorney's fees under the Texas UDJA.

9. Plaintiffs stipulate to the validity of the voting procedures for the 2020 Restrictions [] and the validity of the individual votes themselves regarding the 2020 Restrictions []. Therefore, Plaintiffs do not challenge the procedural validity of the 2020 Restrictions [] and further agree that all procedures required for an amendment to the Restrictions were followed.

10. After deciding the legal issues presented, the trial court shall determine in its discretion what attorney's fees, if any, are equitable and just to any party under the Texas UDJA.

11. The reasonable and necessary attorney's fees for either party are stipulated to be $15,000 through the signing of the judgment on the agreed case. The reasonable and necessary attorney's fees for intermediate appeal shall be $12,500 for either side. The reasonable and necessary attorney's fees for proceedings in the Texas Supreme Court shall be $5,000 for the review stage; $5,000 for the briefing stage; and $2,500 for the oral argument stage.

12. Nothing herein shall affect or limit a party's right to seek supplemental or further relief pursuant to Tex. Civ. Prac. & Rem. Code § 37.011.

The 2007 and 2020 Amendments

The 2007 amendments to the existing restrictions that were in effect when the Appellants bought their property included the following language:

Part I

[I]n consideration of the premises and for the purpose of amending, continuing in effect and carrying out the purposes of insuring harmonious, pleasant and satisfactory living conditions in a residential subdivision, and to insure means for mutually safeguarding and enhancing the value of investments in said Subdivision by each property owner - therein, the undersigned lot owners and Twin Shores Property Owners Association hereby execute the Amended Declaration, which shall amend and supplant the Original Declaration in its entirety, and in so doing, the undersigned lot owners and Twin Shores Property Owners Association hereby adopt, establish, promulgate, and impress upon the Subdivision the restrictions and covenants set forth hereinafter, which said restrictions, covenants and provisions shall govern the development and use of said Subdivision, and shall be binding upon said owners, their heirs, successors and assigns, for the term stipulated herein.
. . .
…These covenants, restrictions and/or provisions may be amended or modified at any time, or terminated in its entirety, by the recording in the Official Public Records of Real Property of Montgomery County, Texas of an amendment or termination instrument, signed by Owners representing a majority of the total votes of the Members of the Association.

Part IV

1. LAND USE: No Lot, building site or tract shall be used except for residential purposes, and may not be replated, subdivided or any portion of any Lot used for a road, public or private. ….No business of any type, kind or character, or apartment house, nor any occupation or business for commercial gain or profit shall be done or carried on in said residential area. All parts of said Subdivision are hereby designated as a residential area except a 1.534 acre parcel of land, and designated

4

on the recorded plat as RESERVE ONE. This site is for the private and exclusive use of all Owners and shall have no commercial activities of any nature or character carried out here, and a portion of or all of Lot 102 and 103 may be used for the purpose of building tennis courts thereon, for the common use of Twin Shores property Owners. Unless otherwise expressly stated herein, no use shall be made of any reserve area as shown on the plat, of this Subdivision without the express written consent of Twin Shores Property Owners Association, or its successors in interest, and without the additional approval of the Architectural Control Committee.

The 2020 Amendment included the following language:

NOW, THEREFORE, in consideration of the premises and for the purpose of amending, continuing in effect and carrying out the purposes of insuring harmonious, pleasant and satisfactory living conditions in a residential subdivision, and to insure means for mutually safeguarding and enhancing the value of investments in said Subdivision by each property owner - therein, the undersigned lot owners and Twin Shores Property Owners Association hereby execute the Amended Declaration, which shall amend and supplant the Original Declaration in its entirety, and in so doing, the undersigned lot owners and Twin Shores Property Owners Association hereby adopt, establish, promulgate, and impress upon the Subdivision the restrictions and covenants set forth hereinafter, which said restrictions, covenants and provisions shall govern the development and use of said Subdivision, and shall be binding upon said owners, their heirs, successors and assigns, for the term stipulated herein.

WHEREAS, the Members of the Association, desire to amend the above document as hereinafter set forth to address the above stated issue; and

WHEREAS, all Members of the Association have been provided written notice of this proposed amendment; and

WHEREAS, this amendment of the Declaration, as set forth below, has been approved by the Members casting at least 2/3rd of the votes in the Association in approval of this amendment:

NOW THEREFORE, pursuant to the above recitals, the Members of the Association hereby amend the provisions of the Declaration to adopt, establish and impose upon the Twin Shores Subdivision, sections one and two and the Association, the following amendments:

**1. Part IV, Section 1 of the Declaration is amended to read as follows:**

1. LAND USE: No Lot, building site or tract shall be used except for residential purposes.… No business of any type, kind or character, or apartment house, nor any occupation or business for commercial gain or profit shall be done or carried on in said residential area.…

. . .

A. Leasing:

> (1) Definitions. For purposes of this subsection, the terms "Lease" and "Leasing" shall refer to the regular, exclusive occupancy of a residence by any person other than the Owner, for which the Owner receives any consideration or benefit including, without limitation, a fee, service, or gratuity. "Rent," rentals," or "renting" shall have the same meaning.
>
> (2) Leases Approved. If the lease or leasing strictly complies with the following terms and conditions, the lease shall be deemed approved without further action by either the Owner or the Board:
>
>> (a) Written Lease. All leases for any Property must be in writing and shall provide that:
>>
>>> (i) such lease is specifically subject to the provisions of this Declaration and all other Governing Documents of the Association;
>>>
>>> (ii) any failure of the Owner or tenant to comply with the terms of the Declaration and all other Governing Documents shall be deemed to be a default under such lease; and
>>>
>>> (iii) the Owner acknowledges giving to the tenant copies of the Declaration and all other Governing Documents, as a part of the lease.
>>
>> (b) Notice to Association. Within 10 days of a lease being signed, the Owner of the leased residence shall notify the Association of the lease, send a signed copy of the lease to the Association or its management company, and provide

6

any additional information the Association or Board may reasonably require.

(c) Whole House. Any residence that is leased shall be leased only in its entirety; separate rooms, floors, or other areas within a dwelling may not be separately leased.

(d) One Family. It is expressly forbidden to rent or lease and occupy an Owner's Lot or residence to more than one Single-Family.

(e) Lease Term. The lease shall provide for a minimum initial term of at least six (6) months. The residence may not be subleased and the lease may not be assigned during the initial six month term.

(f) Termination. In the event of termination of the lease after the tenant has taken occupancy and prior to the end of the minimum initial term, the Owner may not enter into a new lease with a term commencing prior to the date on which the previous lease would have expired without prior approval of the Board. The Board may grant approval for such a new lease if it determines that the Owner acted in good faith with no intent to circumvent the requirements of this subsection and could not have reasonably anticipated the early termination of the previous lease at the time the previous lease was signed.

(3) Leases Prohibited. Leasing of residences other than in strict conformity with Section 1.A.(2) hereof, including short-term or vacation rentals, is prohibited.

(4) Advertisements. No home or lot shall be advertised for lease for a period less than six (6) months. Further, no home or lot shall be advertised or listed on any short term or vacation rental website, media platform or database (e.g. Airbnb, VRBO, Flipkey, HomeAway, Hometogo, etc.)[.]

The 2020 Amendment also states, "the Owners having at least sixty-seven percent (67%) of the total votes allocated to the property owners in the Association have voted in favor of and approved this amendment."

7

Plaintiffs allege that they bought a residence in Twin Shores subdivision when the governing restrictions were the 2007 Restrictions and that under those restrictions, they had the right to use their property for short-term rental property. They argue that this right was part of their rights as a property owner and part of their "bundle of rights," and they contend that the majority of the property owners in the HOA cannot take that right away from them by making amendments to the deed restrictions. Plaintiffs argue that the 2020 Amendment defeats the legitimate, reasonable expectations of those who bought under prior restrictions. According to Plaintiffs, short-term rentals became more widespread as the internet has developed and since the Texas Supreme Court determined in *Tarr*[3] that short-term leasing is an ordinary residential use under common deed restriction wording. Plaintiffs admit they were on notice of the existing 2007 Restrictions when they bought their property and argue they "relied on them crucially." Plaintiffs contend that the restrictions in place when they bought their property contained no restrictions on "leasing" or renting of property and no restrictions on the duration of occupancy of the main dwelling. Plaintiffs argue that because most restrictive covenants can be amended, "so no buyer can avoid it[,]" buyers are not "fairly on notice of future amended restrictions," such as a new restriction on the right to lease.

---

[3] *See Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 276, 290-92 (Tex. 2018).

According to Plaintiffs, while the law allows amendments that remove restrictive covenants, no Texas case has allowed a majority of property owners to take away property rights from owners who bought relying on earlier restrictions. Plaintiffs acknowledge that Texas court cases have validated amended restrictions, but Plaintiffs narrowly construe those cases to apply only if the restrictions "furthered the purposes of existing restrictions."[4]

Plaintiffs contend that the 2007 Restrictions allowed "wide-open leasing and occupancy[]" and such unrestricted rights should not be "taken away summarily after purchase." Plaintiffs characterize their position as "seek[ing] merely to preserve the original intent of the developer." According to the Plaintiffs, not all states interpret the amendment of deed restrictions in the same manner. Plaintiffs argue some states evaluate whether a new restriction is fair by examining whether it is "new and unexpected," while others employ a pure contract approach by which

---

[4] *See Winter v. Bean*, No. 01-00-00417-CV, 2002 Tex. App. LEXIS 1012, at *1 (Tex. App.—Houston [1st Dist.] Feb. 7, 2002, no pet.) (enforcing an amendment that prohibited an owner from re-subdividing a lot originally platted by the developer); *Sunday Canyon Prop. Owners Ass'n v. Annett*, 978 S.W.2d 654, 658 (Tex. App.—Amarillo 1998, no pet.) (allowing a majority of owners to enforce new assessments for maintaining infrastructure against a minority of owners because the purpose of the amendments was to further the purpose of the original restrictions); *Harrison v. Air Park Estates Zoning Comm.*, 533 S.W.2d 108, 111 (Tex. App.—Dallas 1976, no writ) (in a subdivision intended as "homesites for people who like airplanes[,]" an amended restriction requiring construction of a home before construction of a hangar was valid as a reasonable extension of the original restrictions).

an amendment is enforceable if approved by the required number of votes by property owners. Plaintiffs contend that Texas courts should not adopt a pure contract approach to this issue because property buyers in Texas do not have a choice to avoid restrictive covenants or amendments thereto, and a typical buyer would not anticipate that an amendment to the restrictions can mean "my property rights can be taken away summarily by my neighbors." Plaintiffs also allege that the 2020 Amendment's ban on certain advertising is an unconstitutional denial of commercial speech.[5]

Plaintiffs do not contend that deed restrictions cannot ever be amended, but rather they challenge whether an existing owner can be subjected to the amended restrictions. Plaintiffs assert that the freer use of land results in higher property values and that new restrictions should not apply to existing owners but only "when any given property is conveyed anew[.]"

According to the Appellants, "an owner's right to decide who stays in a house when[]" is a fundamental property right, and if the 2020 Amendment is enforceable, "no property rights are safe anymore." They allege they relied on their "wide-open" property rights to rent out their home for short terms, and they relied on the rental

---

[5] Citing *Anderson Courier Serv. v. State*, 104 S.W.3d 121 (Tex. App.—Austin 2003, pet. denied) (concluding that section 38.18 of the Penal Code, which made it a misdemeanor to use information obtained from the Department of Public Safety for the direct solicitation of business or employment or for pecuniary gain, was an unconstitutional regulation of commercial free speech).

income "in light of the sums they spent improving it and mortgaging it." Appellants complain that the trial court erred in concluding the 2020 Amendment is enforceable against them and that the trial court erred in relying on Chapter 201 of the Property Code because Chapter 201 allows property owners who do not agree to amendments to opt out and because "Chapter 201 was largely superseded by Chapter 209[.]"[6]

Defendant disagrees and responds that the Plaintiffs bought their property with notice that the property was subject to certain restrictions and that the property was subject to an existing POA. Defendant emphasizes that the existing restrictions included a provision that expressly permitted the restrictions to be modified or amended by a vote of the members of the POA, that the Plaintiffs were given notice of the proposed amendments, and that the POA followed the governing procedure and a majority of the landowners voted to adopt the 2020 Amendment. The 2007 Restrictions also stated that they were binding on the owners in the subdivision and their "heirs, successors, and assigns," and the POA expressly had the power in the 2007 Restrictions to adopt, amend, terminate, or enforce the rules and regulations.

---

[6] *See* Tex. Prop. Code Ann. § 201.009(b)(3), (4) (allowing for property owners to opt out of restrictions that are added, modified, created, or extended under Chapter 201 if the owners did not sign the petition to amend restrictions and did not receive actual notice of filing the petition, or if the owners did not sign the petition and file within one year a statement electing to have their property excluded from the amendment).

The POA contends that the power to amend restrictions is a traditional contract right that is bargained-for, and to reject the 2020 Amendment would "nullify the Amendment Clause in the parties' contract." According to the POA, while generally covenants restricting the free use of property are not favored under Texas law, that rule of construction only applies when a restriction (or contract provision) is ambiguous.[7] Otherwise, the POA argues that Texas jurisprudence has a "strong public policy favoring freedom of contract[,]" and courts "'are not lightly to interfere with this freedom of contract.'"[8] The Defendant disagrees with the Plaintiffs' interpretation of Texas law and emphasizes that Texas caselaw consistently interprets deed restrictions and the power of an association to amend such restrictions under principles governing contract law. The POA asserts that the contractual and bargained-for right to amend property restrictions is a way that homeowners may address "novel developments" such as the internet and vacation rentals that could not have been anticipated when they bought their property or when the subdivision was created. The POA contends that restrictive covenants and amendments thereto should be given their commonly accepted meaning, whether the amendment results in a marginal or significant change. The POA further maintains

---

[7] *See Tarr*, 556 S.W.3d at 280 (citing *Davis v. Huey*, 620 S.W.2d 561, 565 (Tex. 1981)).

[8] *See Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 471 (Tex. 2016); *Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 912 (Tex. 2007) (quoting *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 767 (Tex. 2005)).

that enforcing the 2020 Amendment will not destroy property rights but would protect the homeowners' contractual rights.

The POA specifically emphasizes that in *Tarr*, the Texas Supreme Court recognized property owners have the right "'to contract with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal.'"[9] And, the POA argues that in *Couch v. Southern Methodist University*, the Texas Supreme Court did not reject the right to amend restrictions but only limited the right to amend to include "changes contemplating a correction, improvement or reformation of the agreement rather than a complete destruction of it."[10]

We note a significant factual distinction between the facts here and the facts in *Couch*. Unlike our facts, the existing restrictions in *Couch* did not include language that granted the association the right to terminate the restrictions entirely. The POA explains that the 2020 Amendment limiting short-term rentals did not cause a "complete destruction" of the restrictive covenants but rather the amendments were "a change wrought in accordance with the covenants' own Amendment Clause." The POA contends that Texas cases such as *Winter*, *Sunday Canyon*, and *Harrison* upheld the right of a property owners' association to amend

[9] 556 S.W.3d at 279 (quoting *Curlee v. Walker*, 244 S.W. 497, 498 (Tex. 1922)).

[10] 10 S.W.2d 973, 974 (Tex. 1928).

restrictive covenants and enforce them against property owners who had purchased before the amendments.[11] The POA also argues that the 2020 Amendment about advertising was not subject to a constitutional free-speech challenge because the restrictions are private restrictions that were voted on and passed by a majority of the homeowners.[12]

The Trial Court's Final Judgment

After summarizing the parties' arguments in its judgment and briefly noting some existing Texas statutes, the trial court concluded that the POA was entitled to declaratory relief that the 2020 Amendment was enforceable against the Plaintiffs and the Plaintiffs were required to comply with the 2020 Amendment. The trial court did not award attorney's fees to either party. The trial court awarded costs to the POA.

---

[11] *See Winter*, 2002 Tex. App. LEXIS 1012; *Sunday Canyon*, 978 S.W.2d 654; *Harrison*, 533 S.W.2d 108.

[12] *See Park v. Escalera Ranch Owners' Ass'n, Inc.*, 457 S.W.3d 571, 590 n.9 (Tex. App.—Austin 2015, no pet.) (stating that the property owners' association was a private nonprofit corporation, and the association did not engage in state action subject to a constitutional challenge); *see also Palma v. Genesis Cmty. Mgmt., Inc.*, No. 4:18-CV-0124, 2018 U.S. Dist. LEXIS 84983, at *8 (S.D. Tex. May 2, 2018) ("Courts within the Fifth Circuit have held that homeowner's associations are not state actors," unless the State of Texas is pervasively entwined in management and operations); *Du Bois v. Bradley*, Civil Action No. 4:13-CV-00252, 2013 U.S. Dist. LEXIS 101946, at *10 (S.D. Tex. June 10, 2013) ("[T]he First Amendment does not regulate the conduct of private parties.").

14

Issues

Appellants state their issues as follows: (1) whether a majority of owners in a subdivision may adopt new restrictive covenants that deprive existing owners of property rights; (2) whether restrictive covenants may require someone who rents a home to physically occupy it for a minimum length of time; and (3) whether restrictive covenants may prohibit a property owner from advertising a home on the internet.[13] We consider Appellants' first two issues together, and we address their third issue separately.

Standard of Review

The trial court's Final Judgment begins with a discussion of the issues and arguments presented by the parties. The discussion—which precedes that section of the Final Judgment that includes decretal language—does not on its face include findings of fact or conclusions of law. Therefore, we regard the discussion portion

---

[13] Here, we are not presented with the issue of whether short-term rentals— whether for one day or six months—constitute a residential or commercial use, as that issue was not argued to the trial court nor on appeal.

of the Final Judgment as a letter ruling that is not binding on this court.[14] We do not determine whether the trial court's discussion supports its judgment.[15]

In a case submitted to the trial court on an agreed stipulation of facts under Rule 263, the parties are seeking a judgment on a special verdict and "judgment in accordance with the applicable law."[16] On appeal, we examine the correctness of the trial court's application of the law to the admitted facts, which is a question of law that we review under a de novo standard.[17]

---

[14] *Cf. Cherokee Water Co. v. Gregg Cty. Appraisal Dist.*, 801 S.W.2d 872, 877-78 (Tex. 1990) (concluding that a letter ruling was not competent evidence of the trial court's basis for its judgment); *AIMS ATM, LLC v. Sanip Enters.*, No. 01-13-00155-CV, 2014 Tex. App. LEXIS 2261, at *4 n.1 (Tex. App.—Houston [1st Dist.] Feb. 27, 2014, no pet.) (mem. op.) ("Explanatory letters from the trial court preceding a judgment do not impact the standard or scope of our appellate review."); *Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 375 S.W.3d 464, 482 n.24 (Tex. App.—Austin 2012, pet. denied) (same).

[15] *See Bell Helicopter Textron, Inc. v. Burnett*, 552 S.W.3d 901, 911 n.7 (Tex. App.—Fort Worth 2018, pet. denied) (explaining that a letter ruling does not constitute formal findings and is not competent evidence of the trial court's basis for its judgment).

[16] *Harris Cty. Appraisal Dist. v. Transamerica Container Leasing Inc.*, 920 S.W.2d 678, 680 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

[17] *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *DeGuerin v. Wash. Cty. Appraisal Dist.*, No. 01-11-00548-CV, 2012 Tex. App. LEXIS 3031, at *8 (Tex. App.—Houston [1st Dist.] Apr. 19, 2012, no pet.) (citing *Transamerica*, 920 S.W.2d at 680; *Harris Cty. Appraisal Dist. v. Tex. Gas Transmission Corp.*, 105 S.W.3d 88, 91 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)); *Port Arthur Indep. Sch. Dist. v. Port Arthur Teachers Ass'n*, 990 S.W.2d 955, 957 (Tex. App.—Beaumont 1999, pet. denied).

*Tarr v. Timberwood Park Owners Association*

In 2018, the Texas Supreme Court decided *Tarr v. Timberwood Park Owners Association*.[18] In *Tarr*, the Court concluded that a property owner's short-term rental of his property did not violate the applicable deed restriction that limited tracts to "residential purposes and single-family residences[,]" because the unambiguous restrictive covenants imposed no such limitation on short-term rentals.[19] The Court emphasized that such restrictions or covenants are subject to "general rules of contract construction[,]"[20] and noted that "[o]ur courts enforce these private agreements subject to certain well-established limitations."[21] In making its ruling, the Court expressly noted that "neither the association nor Tarr attempted to amend the deed restrictions to specify a minimum duration for leasing—an option available to both of them under the deed's amendment provisions."[22] Unlike the parties in

---

[18] 556 S.W.3d 274.

[19] *Id.* at 276.

[20] *Id.* at 280.

[21] *Id.*

[22] *Id.* at 277. At oral argument, Appellant argued that this statement in *Tarr* was *dicta* and implied it has no precedential value. We disagree because we conclude the statement is at a minimum *judicial dictum* that is instructive and should be followed by us. In *Seger v. Yorkshire Insurance Co.*, 503 S.W.3d 388, 399 (Tex. 2016), the Texas Supreme Court noted that dictum is defined as: "'An opinion expressed by a court, but which, not being necessarily involved in the case, lacks the force of an adjudication; an opinion of a judge which does not embody the resolution or determination of the court, and made without argument, or full consideration of the point.'" (quoting *Grigsby v. Reib*, 153 S.W. 1124, 1126 (Tex. 1913)). The Court explained that there are two types of dicta: *judicial dictum* and *obiter dictum*. *Id.* (citing *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764, 773 (Tex. 1964)).

*Tarr*, in the case that is now before us, the POA exercised its option and right to amend its restrictions as provided for under the governing provisions. The Plaintiffs and Defendant stipulated that the POA properly followed the governing procedures when the POA amended the restrictions in 2020. In this case, with respect to the leasing provision in the 2020 Amendment, the Plaintiffs are not arguing the terms in the 2020 Amendment are ambiguous, they are not arguing the POA violated the amendment procedures, nor are they asking the Court to interpret the terms in the leasing section of the 2020 Amendment. Rather, Plaintiffs' argument hinges on the underlying premise that a POA should not be allowed to exercise the amendment procedures available when the amendment would restrict an existing property owner's rights to use her property.[23]

_____

*Obiter dictum* is not binding as precedent, but *judicial dictum* is instructive and a statement that is made "deliberately after careful consideration and for future guidance in the conduct of litigation." *Id.* (citing *Lund v. Giauque*, 416 S.W.3d 122, 129 (Tex. App.—Fort Worth 2013, no pet.); *Palestine Contractors, Inc.*, 386 S.W.2d at 773)). Therefore, *judicial dictum* "is at least persuasive and should be followed unless found to be erroneous." *Id.* (citing *Palestine Contractors, Inc.*, 386 S.W.2d at 773 (citing *R.R. Comm'n v. Aluminum Co. of Am.*, 380 S.W.2d 599, 601 (Tex. 1963)); *see also In re S. Ins. Co.*, No. 09-11-00022-CV, 2011 Tex. App. LEXIS 1734, at *4 (Tex. App.—Beaumont Mar. 10, 2011, orig. proceeding) (mem. op.) ("Even if some statements…may not have been pivotal to the [Texas] Supreme Court's opinion, a lower court is not free to ignore statements of law 'said deliberately' by the Supreme Court.").

[23] Here, as in *Tarr*, the amendment process was an option available to the parties and it is the POA's exercise of the amendment process that the Plaintiffs argue is "repugnant" to their individual right to use of their own property. This repugnance, if any, existed when Plaintiffs decided to buy property that was part of an existing subdivision with a POA, subject to regulations on use, and which could

18

Restrictive Covenants

Generally, an instrument containing restrictive covenants in a subdivision defines the rights and obligations of property ownership in the subdivision, and the mutual and reciprocal obligations undertaken by all purchasers in a subdivision creates a property interest, possessed by all purchasers.[24] Mutuality of obligation is "'central to the purpose of restrictive covenants.'"[25] A property owner "submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots."[26]

Under Texas law, three conditions must be met to amend deed restrictions.[27] First, the instrument creating the original restrictions must establish both the right to

_____

be amended. Under Plaintiffs' theory, each landowner would only be subject to those restrictions that were in place when they bought their property and future amendments would not be enforceable against them if the amended restrictions reduced a respective landowner's existing property rights, even when the amendment was duly adopted by governing procedures.

[24] *See C.A.U.S.E. v. Village Green Homeowners Ass'n, Inc.*, 531 S.W.3d 268, 274 (Tex. App.—San Antonio 2017, no pet.); *see also Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 636 (Tex. 1987) ("The concept of community association and mandatory membership is an inherent property interest.").

[25] *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 333 (Tex. 2020) (quoting *Davis*, 620 S.W.3d at 568).

[26] *Curlee*, 244 S.W. at 498.

[27] *Wilchester W. Concerned Homeowners LDEF, Inc. v. Wilchester W. Fund, Inc.*, 177 S.W.3d 552, 562 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing *Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 313 (Tex. App.—Fort Worth 2001, no pet.); *Hanchett v. E. Sunnyside Civic League*, 696 S.W.2d 613, 615 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.)).

amend and the method of amendment.[28] Second, the right to amend implies only those changes contemplating a correction, improvement, or reformation of the agreement rather than its complete destruction.[29] Third, the amendment must not be illegal or against public policy.[30] Here, Appellants do not dispute that the 2007 Restrictions established a right to amend and method of amendment, nor do they challenge the validity of voting procedures or individual votes.

The Texas Supreme Court has stated that "'[t]he law recognizes the right of parties to contract with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal.'"[31] "Courts strive to honor the parties' agreement and not remake their contract by reading additional provisions" into the agreement.[32] We construe a contract in favor of mutuality of obligation.[33] "Although covenants restricting the free use of property are not favored, when restrictions are confined to a lawful purpose and are within reasonable bounds and the language employed is clear, such covenants will be enforced."[34] Courts should refrain from nullifying a transaction because it is contrary

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Tarr*, 556 S.W.3d at 279 (citing *Curlee*, 244 S.W. at 498).

[32] *Gastar Expl. Ltd. v. U.S. Specialty Ins. Co.*, 412 S.W.3d 577, 583 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

[33] *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 857-58 (Tex. 2009).

[34] *Tarr*, 556 S.W.3d at 282 (quoting *Davis*, 620 S.W.2d at 565).

to public policy, "'unless the transaction contravenes some positive statute or some well-established rule of law.'"[35]

Appellants acknowledge that they had notice in 2014 when they bought their property that the deed restrictions allowed amendments. The 2007 Restrictions, by their express terms, provided that the terms could be "amended, or modified at any time, or terminated in [their] entirety" by recording an amendment or termination signed by a majority of the property owners.[36] When buyers purchase property subject to a declaration capable of amendment if certain procedures are followed, they are "on notice that the unique form of ownership they acquired when they purchased their [property] was subject to change through the amendment process, and that they would be bound by properly adopted amendments."[37] So, property owners that purchase property that is part of a valid existing POA "know in advance

---

[35] *Teal Trading & Dev., LP*, 593 S.W.3d at 338 (quoting *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 553 (Tex. 2001); *Sherrill v. Union Lumber Co.*, 207 S.W. 149, 153 (Tex. App.—Beaumont 1918, no writ)).

[36] Chapter 204 of the Texas Property Code provides a method for a POA to amend bylaws and regulate the use of a subdivision, although where a document expressly provides terms allowing a POA to modify existing provisions, that document prevails over Chapter 204. *See* Tex. Prop. Code Ann. §§ 204.003(a), 204.010(a)(1), (6), 209.0041(h).

[37] *See Woodside Vill. Condo. Ass'n, Inc. v. Jahren*, 806 So. 2d 452, 460-61 (Fla. 2002).

that the rules might change and that they are often subjecting themselves to the will of the majority" in the POA.[38]

Appellants argue that this Court should reject the "pure-contract approach" because it fails to acknowledge that buyers do not have a meaningful choice to avoid amendments to restrictive covenants, and because home buyers lack the power to "negotiate away restrictive covenants." Appellants also argue that an enforceable amendment is only one that furthers the purposes of existing restrictions, and they infer that the POA's 2020 Amendment does not further the purpose of the scheme or plan of the subdivision, or the existing restrictions. Appellee disagrees and argues the 2020 Amendment is entirely consistent with the 2007 Restrictions and within the express authority and procedure for amendment.

Appellants and Appellee both cite *Tarr v. Timberwood*, *Winter v. Bean*, *Sunday Canyon Property Owners Association v. Annett*, and *Harrison v. Air Park Estates Zoning Commission*.

We previously discussed *Tarr v. Timberwood*.[39] In *Winter v. Bean*, the Winters bought property that was subject to an amendment clause.[40] Later, the deed restrictions were amended to prevent property owners from subdividing existing

---

[38] *See* Donald J. Kochan, *The Sharing Stick in the Property Rights Bundle: The Case of Short Term Rentals & HOAs*, 86 U. Cin. L. Rev. 893, 910 (2018).
[39] *See supra* at pp. 17-18.
[40] 2002 Tex. App. LEXIS 1012, at *1.

22

lots.[41] The Winters claimed they had no notice that their alleged "vested property right" to subdivide their lot could be revoked.[42] Because the original deed restrictions expressly provided that a majority of property owners could change or modify the restrictions and did not require notice to be given to all property owners, the Houston First Court of Appeals concluded that upon purchasing their property, the Winters were on constructive notice that the original deed restrictions could be modified or changed.[43] So the First Court concluded the Winters were bound by the amendments, which prohibited the Winters from splitting or further subdividing their lot.[44] The Winters argued the amendments violated their freedom to contract and freely use their land, and should be declared void in violation of public policy.[45] While the First Court agreed with the general public policy principles about the freedom to contract, it still concluded the Winters had failed to "explain how these general principles were violated[.]"[46]

In *Sunday Canyon*, the originally recorded plat for the subdivision included restrictions, and the restrictions included a provision allowing a modification by written consent of 51% of the owners.[47] The Annetts purchased two lots in the

---

[41] *Id.* at **1-2.
[42] *Id.* at *2.
[43] *Id.* at **4-5.
[44] *Id.* at **4-5.
[45] *Id.* at *7.
[46] *Id.* at **8-9.
[47] 978 S.W.2d at 656.

subdivision. The owners of more than 51% of the lots voted to modify the plat and restrictions that empowered the POA, to levy charges and assessments for roads, the water system, common areas, to provide for architectural control over improvements, and "to promote the health, welfare and safety of the residents."[48] The Annetts did not vote for the amendments, and they sued, arguing that the original restrictions were vague and ambiguous and incapable of enforcement and that the modification created new POA powers not intended by the original restrictions.[49] In its judgment, the trial court concluded that the modification was enforceable because it complied with the method prescribed in the original restrictions, but that the assessments and charges were an impermissible lien against the Annetts' property.[50] On appeal, the Amarillo Court of Appeals concluded that the original restrictions set forth an enforceable mechanism for amendment which was neither illegal nor against public policy.[51] The court explained the right to contract with respect to property owned "embraces the ability to impose on the property restrictive covenants and to abrogate or modify them."[52] The court concluded that the modified

---

[48] *Id.*
[49] *Id.* at 657.
[50] *Id.*
[51] *Id.*
[52] *Id.* at 658.

restrictions did not destroy the dedication but were changes made in accordance with it and to further the purpose of the original restrictions.[53]

Applied to this case, we read *Tarr*, *Winter*, and *Sunday Canyon* to support the conclusion that amended or modified restrictive covenants may be enforced, against owners who acquired their property before the amendment, even if they did not vote for the amendment, when the original restrictions provided a method for amendment, that method was followed, and the owners were on constructive notice the restrictions could be amended by amendment.

In *Harrison*, Harrison bought property in a subdivision developed to provide "homesites for people who like airplanes."[54] When Harrison bought his lot, the deed restrictions provided that "[a] hangar may be built before the home is built[.]"[55] Later, 76.4% of the property owners voted to modify the restrictions to provide that "no hangar may be built before a home[.]"[56] After the modified restriction was approved, Harrison submitted a plan for the construction of a hangar on his lot without first building a house, and his plan was disapproved.[57] The subdivision's zoning committee sued to enjoin Harrison's construction, and the trial court granted the subdivision's request for a temporary injunction to enjoin Harrison from building

---

[53] *Id.*
[54] 533 S.W.2d at 110.
[55] *Id.*
[56] *Id.*
[57] *Id.*

the hangar.[58] Harrison appealed, arguing in part that a grantor may not sell property under certain restrictions while retaining the right to impose further restrictions. Harrison also argued the subdivision's modifications were void because they were more restrictive than the original restrictions on his lot.[59] The Dallas Court of Appeals affirmed, finding the modified restrictions reasonable because they were consistent with the developer's original plan.[60] The court stated that "[l]andowners have the right to impose any restrictions they choose so long as the restrictions are not against public policy or illegal."[61] We conclude that *Harrison* supports the principle that amended restrictive covenants may be enforced against an owner who bought property before the amendment, when the amendment is consistent with the general plan or scheme of development for the subdivision.

The 2007 Restrictions in place when Appellants bought their property stated that they were adopted for "the purposes of insuring harmonious, pleasant and satisfactory living conditions in a residential subdivision, and to insure means for mutually safeguarding and enhancing the value of investments" in the subdivision.[62]

---

[58] *Id.*

[59] *Id.* at 110-11.

[60] *Id.* at 111.

[61] *Id.*

[62] Airbnb has been in business since 2008. *See Parker Madison Partners v. Airbnb, Inc.*, 283 F.Supp.3d 174, 181 (S.D.N.Y. 2017); *Airbnb, Inc. v. City & Cty. of San Francisco*, 217 F.Supp.3d 1066, 1069 (N.D. Cal. 2016). For that reason, it would not have been possible for the 2007 Restrictions to anticipate the development of Airbnb advertising. We note that the current Airbnb Terms of Service caution that

The record evidence provides no basis for this Court to conclude that the 2020 Amendment does not further the purposes stated in the previous restrictions.

Appellants also argue the 2020 Amendment should only apply to new property owners and cannot be enforced in a manner that would take away the rights of owners who bought before the amendment. Under this theory, amended restrictions would only be enforceable against purchasers who purchase property after the amendments are adopted and would not be enforceable against all current owners, even when the property owners voted for the amendment. No language in the 2007 Restrictions or the 2020 Amendment suggests that limitation. We find no Texas case directly on point that would require that result. To the contrary, as noted above, the case law when applied to these stipulated facts, simply does not support Appellants' arguments. When Appellants bought their lots, the lots were subject to restrictions that could be amended pursuant to the very process that occurred here. Both sides agreed to that process, and we will not rewrite their agreement.[63] So, we reject Appellants' argument.

---

"Some landlords and leases, or homeowner and condominium association rules, restrict or prohibit subletting, short-term rentals and/or longer-term stays." *See* Airbnb.com, *Terms of Service* (Feb. 10, 2022), https://www.airbnb.com/help/article/2908/terms-of-service.

[63] *See Tarr*, 556 S.W.3d at 280 (Courts should construe restrictive covenants to give them meaning "'as of the date the covenant was written, and not as of some subsequent date.'") (quoting *Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987)); *Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 857-58 (We construe a contract in favor of mutuality of obligation.); *Gastar Expl. Ltd.*, 412 S.W.3d at 583

Appellants further argue that freer use of property—that is, property unencumbered by restrictive covenants—frees up land for more uses and "equates to higher property value." Appellants provide no citation to the record or to legal authority for this argument.[64] As a general proposition, while that may be true in the abstract for some buyers in some markets, the Texas Supreme Court has stated that "restrictive covenants can enhance the value of real property."[65] "The buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots."[66] Whether the 2020 Amendment would increase or decrease property values is not before us, the Appellant has failed to cite to anything in the record on that issue, and we note that this issue would normally be a question of fact. We may review only questions of law in this appeal.[67]

On the record, we conclude the trial court did not err in concluding that the 2020 Amendment is valid and enforceable against Appellants. The amended restrictions neither forbid all rentals of property, nor did Appellants present any stipulated facts in the trial court that rentals of at least six months, the duration required by the amended restrictions, is unreasonable. When the Appellants bought

---

(We construe a contract as written, not "reading [in] additional provisions[,]" and giving effect to all provisions and rendering none meaningless or useless.).

[64] *See* Tex. R. App. P. 38.1(i) (requiring appellate briefs to provide citations to authorities and to the record).

[65] *See Tarr*, 556 S.W.3d at 279.

[66] *Id.* at 280 (quoting *Curlee*, 244 S.W. at 498).

[67] *See Transamerica*, 920 S.W.2d at 680.

their property, they were on notice that the POA could amend the restrictive covenants by a majority vote of the property owners. Appellants do not argue that they did not get notice of the proposed amendments, and in fact they agree that they exercised their voting rights and voted against the changes. Here, the POA exercised its option to amend the deed restrictions, specifying a minimum duration for leasing, "an option available to [] them under the deed's amendment provisions."[68]

Appellants are bound by the 2020 Amendment. The record reflects that the POA complied with the necessary elements for amending the restrictions, and the 2020 Amendment was favorably supported by a majority of the owners.[69] We need not address Appellants' arguments about Chapter 201.[70] We overrule Appellants' first and second issues.

Restrictions on Advertising

We separately consider the limitations on advertising in the 2020 Amendment. Appellants argue that the limitations on advertising violate public policy and are "facially overbroad and repugnant to free speech." Appellants argued in the trial court that the limitations on advertising were a "flat-out denial of commercial speech

---

[68] *See Tarr*, 556 S.W.3d at 277.

[69] *See generally Winter*, 2002 Tex. App. LEXIS 1012; *Sunday Canyon*, 978 S.W.2d 654; *Harrison*, 533 S.W.2d 108.

[70] *See* Tex. R. App. P. 47.1; *Bos v. Smith*, 556 S.W.3d 293, 299 (Tex. 2018) ("An erroneous conclusion of law does not require reversal if the trial court rendered the proper judgment.") (citing *BMC Software Belg., N.V.*, 83 S.W.3d at 794).

[that] rises to the level of a constitutional infirmity." As to Appellants' First Amendment arguments, we conclude the record does not support the Appellants' argument claiming the 2020 Amendment constitutes "state action" implicating their First Amendment rights.[71]

Restrictive covenants may be enforced so long as they are lawful, the language employed is clear, and they are within reasonable bounds.[72] The advertising restriction at issue states: "No home or lot shall be advertised for lease for a period less than six (6) months. Further, no home or lot shall be advertised or listed on any short term or vacation rental website, media platform or database (e.g., Airbnb, VRBO, Flipkey, HomeAway, Hometogo, etc.)[.]" The first sentence is consistent with the six-month duration required in the lease provision, and the second sentence of the limitation prohibits any advertisement on "any short-term or vacation rental website, media platform or database" followed by examples of websites where the property may not be advertised. Here, the record contains no evidence to show the terms of service or the listings on the websites where the Appellants may have advertised their property, nor does the record contain any evidence on whether these are the only websites available for advertising property that requires a lease for at

---

[71] *See Palma*, 2018 U.S. Dist. LEXIS 84983, at *8; *Du Bois*, 2013 U.S. Dist. LEXIS 101946, at *10; *Park*, 457 S.W.3d at 590 n.9.

[72] *See Davis*, 620 S.W.2d at 565; *Dyegard*, 39 S.W.3d at 315 ("[A]n amendment must meet a standard of reasonableness and cannot be exercised in an arbitrary or capricious manner.").

least six months. As already noted, we are limited in this appeal to reviewing questions of law.[73]

On this record, we conclude the 2020 Amendment prohibiting advertising on "short term or vacation rental website[s]" is not arbitrary or unreasonable.[74] Accordingly, we conclude the trial court did not err by finding the advertising restriction was enforceable against the Plaintiffs. We overrule Appellants' third issue.

## Attorney's Fees

The trial court determined that it would not be equitable or just to award attorney's fees because the issues were important and reasonably disputed. We review an award or denial of attorney's fees under the Declaratory Judgments Act for an abuse of discretion.[75] Under the Declaratory Judgments Act, a trial court has discretion in deciding whether to award attorney's fees.[76] A court may decide that fees should not be awarded if such an award would not be equitable and just in light

---

[73] *See Transamerica*, 920 S.W.2d at 680.

[74] *See id.*

[75] *Forest Hills Improvement Ass'n, Inc. v. Flaim*, No. 09-18-00199-CV, 2019 Tex. App. LEXIS 8478, at *4 (Tex. App.—Beaumont Sept. 19, 2019, no pet.) (mem. op.).

[76] *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (citing Tex. Civ. Prac. & Rem. Code Ann. § 37.009).

of all the circumstances.[77] On this record, we hold the trial court did not abuse its discretion by refusing to award attorney's fees.[78]

We overrule Appellants' issues, and we affirm the trial court's Final Judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on January 27, 2022
Opinion Delivered March 24, 2022

Before Golemon, C.J., Horton and Johnson, JJ.

---

[77] *See Flaim*, 2019 Tex. App. LEXIS 8478, at *5.
[78] *See Sunday Canyon*, 978 S.W.2d at 658-59 (the trial court did not err by not awarding either party attorney's fees in a dispute over the enforceability of modified restrictive covenants).